# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUTH KNAUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-1387 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Cathy Bissoon |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Plaintiff Ruth Knaus ("Plaintiff" or "Claimant"), has filed this social security appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-403. (Doc. No. 3).

The parties have filed cross motions for summary judgment. (Doc. Nos. 9, 11). Plaintiff argues that the administrative decision is not supported by substantial evidence in the record and, therefore, must be remanded. More specifically, Plaintiff argues that ALJ William E. Kenworthy ("ALJ Kenworthy" or the "ALJ") erred in failing to evaluate her alleged mental impairment of conversion disorder at Step Two of his Five Step analysis. Plaintiff also argues that such failure resulted in a Residual Functional Capacity ("RFC") finding at levels above Plaintiff's proven ability. (Doc. No. 10). Defendant argues that substantial evidence exists to support the ALJ's

1

findings and no definitive diagnosis for conversion disorder exists in the record. Therefore, there is no need to evaluate the impairment under Step Two (or any subsequent step). (Doc. No. 12)

**Background**

Plaintiff applied for DIB on September 29, 2009.[1] In her application, Plaintiff claimed an initial onset date of May 16, 2009, and disability due to right side weakness and numbness and lower back pain (all of which resulted in a gait dysfunction). (R. at 210). Plaintiff was found not disabled and her application initially denied on February 4, 2010. (R. at 132). Thereafter, Plaintiff filed a written request for hearing before an ALJ, which took place on March 1, 2011. (R. at 152).

By decision dated March 3, 2011, the ALJ denied Plaintiff's claim for DIB, finding that she was not disabled from May 16, 2009, through March 13, 2011 (the date of her hearing) as defined in the Social Security Act. (R. at 22). At the time of her hearing, Plaintiff was a forty-one year old woman who graduated from high school through an assisted learning program. (R. 106-07). As determined by the ALJ, Plaintiff lives independently with her husband and two small children and provides for the daily needs of her children as well as her own personal needs. (R. at 18). Her past work experience included employment as a certified nursing assistant for seven years. Plaintiff stopped working following the birth of her first child in August 2005. At that time, Plaintiff began to see a series of doctors regarding complaints of right side weakness and numbness in her legs, lower back pain, as well as difficulty walking. (R. at 16).

The ALJ found that Plaintiff has not engaged in any substantial gainful activity since May 16, 2009, and that she suffered from the following severe impairments: gait dysfunction, chronic back pain and a learning disorder. *Id.* The ALJ assessed Plaintiff's physical and mental

---

[1] Plaintiff initially filed for DIB on December 1, 2006. That application was denied and ultimately resulted in an unfavorable decision issued by ALJ Kenworthy on May 16, 2009.

conditions against the criteria in Appendix 1 of the regulations to determine whether she suffered from an impairment or combination of impairments that meets or medically equals those criteria. (Id. at 18). In doing so, he reviewed Plaintiff's allegations, along with all of Plaintiff's medical records, including records from Dr. Paul Fox, Dr. Barbara Swan, Dr. Hassouri, Dr. Robert Baraff and Dr. Haranath Parepally.[2] (Id.). Based on his review of the record evidence and the testimony at the hearing, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of any impairment listed in Appendix 1. (Id. at 17).

The ALJ went on to find that the claimant's impairments have not resulted in major disorganization of motor function, and that she retains the ability for effective ambulation. (R. at 18). The ALJ further determined that in the current record, the claimant failed to produce any additional evidence relating to her allegation of mental impairment and that her activities of daily living are no more than mildly restricted. *Id*. With regard to concentration, persistence or pace, the ALJ determined that Plaintiff has only moderate difficulties, and Plaintiff successfully completed the test for her Certified Nursing Assistant certificate and typically spends one to two hours on the computer engaging in social activities such as Facebook. *Id*.

Based on the above-outlined evaluation, the ALJ determined that although Plaintiff suffers from the severe impairments of gait dysfunction, chronic back pain and a learning disability, these impairments, whether singularly or in combination, do not meet or equal an impairment listed is 20 C.F.R. Par 404, Subpart P. and that Plaintiff is unable to perform any past

---

[2] With regard to the review of medical records, ALJ Kenworthy wrote: "At the hearing, the claimant has presented additional evidence that is cumulative concerning the same impairments that were considered in a previous decision. No evidence of additional impairments has been presented. In connection with the current claim, consideration has been given to all of the evidence, including that prior to May 15, 2009, so as to obtain a longitudinal view of the claimant's impairments." (R. at 14).

relevant work. (R. at 18). The ALJ found that the Plaintiff retains the Residual Functional Capacity (RFC) to:

> Perform sedentary work as defined in 20 CFR 404.1567(a) except with the sit/stand option at intervals of about 30 minutes. The Claimant can perform simple repetitive tasks that would not involve exposure to heights or hazardous operations. She should not be required to perform tasks that would be dangerous of a person with balance impairment. She could not perform tasks that require literacy about a third grade level.

(Id. at 19).

## **Analysis**

To be eligible for disability insurance benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1) (A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

At Step One, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the Commissioner inquires at Step Three as to whether the impairment or impairments meet (or equal) the criteria of any impairment found in the *Listing of Impairments.* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is

4

automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to Step Four. *Id.* §§ 404.1520(d), 416.920(d). At Step Four, the Commissioner decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Judicial review of the Commissioner's final decisions is plenary as to all legal issues. 42 U.S.C. § 405(g). A district court must determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance," and is evidence which "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Com m'r of Soc. Sec.,* 529 F.3d 198, 200 (3d Cir. 2008).

The focus of Plaintiff's challenge relates to the ALJ's analysis of her impairment of conversion disorder.[3] More specifically, Plaintiff argues that the ALJ erred in finding no definitive diagnosis of conversion disorder and, therefore, erroneously failed to evaluate whether the impairment was severe under Step Two and failed to evaluate the impairment in determining Plaintiff's residual functional capacity.[4] Having carefully reviewed the record, the Court

---

[3] The essential feature of a conversion disorder is the presence of symptoms or deficits affecting voluntary motor or sensory function that suggests a neurological or other general medical condition. http://www.mayoclinic.com/health/conversion-disorder/DS00877 (last visited 10/4/2012).

[4] The Court notes that the ALJ ruled against Plaintiff at Step Five of his analysis, not Step Two, after concluding that her RFC was sufficient to enable her to perform jobs that exist in significant numbers in the national economy. The ALJ moved past Step Two after

concludes that the manner in which the ALJ treated Plaintiff's conversion disorder impairment was not supported by substantial evidence and remand is appropriate. Accordingly, the Court will limit its discussion to the point of error alleged by Plaintiff.

Plaintiff argues that the ALJ ignored the diagnosis of conversion disorder given by Dr. Haranath Parepally and the consultative evaluation offered by Dr. Emanuel Schnepp. (Doc. No. 10). The Court examines both in turn.

On August 31, 2005, Plaintiff was admitted to UPMC Passavant for rehabilitation of her left leg after complaining of difficulty walking and electrical sensation radiating down her leg. (R. at 309). After a physical evaluation on September 1, 2005, Plaintiff underwent a psychiatric evaluation by Dr. Parepally on September 4, 2005. *Id*. Dr. Parepally noted that Plaintiff was conscious and alert with no increased or decreased psychomotor activity. (R. at 315). Dr. Parepally then opined an AXIS I diagnosis of conversion order with motor symptoms, noting Plaintiff's history of pseudoseizures and sexual trauma. (R. at 316).

On February 3, 2010, Emanuel Schnepp, Ph.D conducted a consultative examination of Plaintiff's medical records. In his report, Dr. Schepp notes medically determinable impairments of conversion disorder, major depressive disorder (by history), and mild mental retardation. Dr. Schnepp found that as a whole, Plaintiff's medical records do not demonstrate the presence of "C" criteria and furthermore, Plaintiff's mental disorders indicate a mild to moderate impact on Plaintiff's functional limitations. (R. at 418, 420).

---

concluding that Plaintiff's gait dysfunction, chronic back pain and learning disorder were severe. Before the Court, however, Plaintiff has contended that the ALJ should have found that her conversion disorder was severe as well. Plaintiff claims that the failure to find a severe impairment due to conversion disorder at Step Two tainted the rest of the ALJ's analysis.

The ALJ's discussion of Plaintiff's conversion disorder is limited. In his opinion, the ALJ found that "[i]n passing, it is noted that some physicians have suggested after examination that the claimant may have a conversion disorder. However, the record does not contain a definitive diagnosis of a conversion disorder by any examining medical source." (R. at 19). The ALJ offers no additional discussion or analysis of Plaintiff's conversion disorder diagnosis. In reaching his finding, the ALJ does not mention Dr. Parepally's examination or Dr. Schnepp's report, nor does he assess their credibility or the weight given to their treatment notes and/or opinions. In *Cotter,* the Court held that "[t]he ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence he rejects and his reason(s) for discounting that evidence." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001). The ALJ must make enough factual findings so that the reviewing court has the ability to determine if "significant probative evidence was not credited or simply ignored." *Id.* at 42.

Despite Dr. Parepally's diagnosis of conversion disorder (following an examination of Plaintiff), along with Dr. Schnepp's confirmation and consideration of a diagnosis of conversion disorder, the ALJ writes that no diagnosis from an "examining medical" source exists, and did not evaluate the disorder under Step Two of his analysis. Defendant argues that Dr. Parepally's notes and diagnosis were not conclusive, and his "differential diagnosis, more than three years before the relevant time period of Plaintiff's claim, does not support a finding of a severe impairment." (Doc. 12). The Court notes that upon review, the ALJ has the discretion to reject or adopt Dr. Parepally's diagnosis or Dr. Schnepp's report; the Court does not give direction on that matter. It is the lack of analysis of his findings that leaves the Court wondering if "he

7

considered and rejected" the diagnosis and report, "considered and discounted them, or failed to consider them at all." *Fargnoli,* 247 F.3d at 43–44.

In light of Dr. Parepally's diagnosis and Dr. Schnepp's report, the Court finds it difficult to find substantial evidence for the ALJ's conclusion that no definitive diagnosis of conversion disorder by any examining medical source exists in the record. It is impossible for the Court to determine if the ALJ weighed Dr. Parepally's and Dr. Schnepp's reports or if the reports were ignored, or worse, missed altogether. The regulations clearly require the Commissioner to consider all of a claimant's severe and non-severe impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a) (2); *see also Lambert v. Astrue* 2009 WL 425603, *13 (W.D.Pa. 2009). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence ... [i]n the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett v. Commissioner,* 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted). Therefore, on remand, the ALJ shall address Plaintiff's diagnosis of conversion disorder and the extent to which the impairment creates vocational limitations.

## **Conclusion**

For all of the reasons stated above, Defendant's Motion for Summary Judgment is DENIED, and Plaintiff's Motion for Summary Judgment is GRANTED insofar as it seeks a remand for further administrative proceedings. This case is **REMANDED** for further proceedings before the Commissioner as outlined in the following Order:

8

## II. ORDER

For the reasons stated above, the Court hereby **ORDERS** that Defendant's Motion for Summary Judgment (Doc. 11) is **DENIED**; and Plaintiff's Motion for Summary Judgment (Doc. 9) is **GRANTED**; and this case is **REMANDED FORTHWITH** for further administrative proceedings consistent with the Court's Memorandum and Order.

   **IT IS SO ORDERED**.

                s/ Cathy Bissoon
                Cathy Bissoon
                United States District Judge

October 9, 2012

cc (via ECF):

All counsel of record.